IN RE: Kshnewll COLE, Debtor.

Southwest Airlines Co., Movant,

v.

Tidewater Finance Company, d/b/a Tidewater Motor Credit, assignee of Nissan of South Atlanta, LLC, Respondent.

Case No.: 15–70960–JRS

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed June 24, 2016

Craig Z. Black, The Semrad Law Firm, LLC, Atlanta, GA, for Debtor.

Contested Matter

## ORDER

James R. Sacca, U.S. Bankruptcy Court Judge

Prior to the filing of the Debtor's bankruptcy petition, a judgment creditor filed a garnishment action in state court and obtained a default judgment against the Debtor's employer. After the employer filed a motion to modify or, in the alternative, vacate the default judgment, but before the state court ruled on that motion, the Debtor filed for chapter 13 bankruptcy relief. Thereafter, the judgment creditor continued the action against the Debtor's employer without obtaining relief from the stay. Because the state court ruled the automatic stay did not apply to the proceeding against the employer based on the employer's independent liability, the employer filed a motion to enforce the automatic stay in this Court. [Doc. 24] The issues presented are whether: (1) the *Rooker–Feldman* doctrine prevents this Court from determining the applicability of the automatic stay, (2) the employer has standing to bring the Motion, (3) the employer wage deduction order entered in the Debtor's bankruptcy case was violated by the judgment creditor's action, and (4) the automatic stay applies to the actions of a judgment creditor to enforce a default judgment against a non-debtor garnishee who has independent liability to the judgment creditor.

The Court finds that the employer has standing to bring the Motion, the *Rooker–Feldman* doctrine does not bar a bankruptcy court from reviewing a state court's determination of whether the automatic stay applies and this Court's employer deduction order does not expand the scope of the automatic stay. Furthermore, the Court concludes that the automatic stay does not stay the enforcement of a pre-petition default judgment obtained by a judgment creditor against a garnishee based solely on the garnishee's independent liability on the facts of this case, which facts include that the garnishee is not in possession of any property that was subject to the garnishment, but that the automatic stay would apply to any action with respect to property in the possession of the garnishee that was subject to the garnishment.

### Facts

Tidewater Finance Company ("Tidewater") obtained a judgment against the Debtor for $17,629.39 after she defaulted on the installment payments for her vehicle. Thereafter, Tidewater filed a garnishment action seeking to garnish the Debtor's wages from her employer, Southwest Airlines Co. ("Southwest"), in the Gwinnett County State Court (the "State Court")

(the "Garnishment Action").[1] On April 24, 2015, the State Court issued a summons for continuing garnishment (the "Garnishment Summons"). Southwest received the Garnishment Summons, but Southwest contends it was unable to determine whether the Debtor was one of its employees because of some alleged errors contained in the Garnishment Summons. Southwest, however, did not withhold any wages or file a pleading in the Garnishment Action stating it needed additional information or otherwise file an answer in the Garnishment Action; therefore, on August 18, 2015, the State Court entered a default judgment against Southwest for the full amount owed by the Debtor to Tidewater (the "Default Judgment") as provided for in Georgia law.[2] On October 22, 2015, fifty-nine days after it received actual notice of the Default Judgment, Southwest filed a motion to set aside or modify the default judgment in the Garnishment Action (the "Motion to Set Aside").

Prior to the State Court ruling on the Motion to Set Aside, the Debtor filed for chapter 13 bankruptcy relief on October 30, 2015. An employer wage deduction order was entered explaining that, among other things, the automatic stay "stays the continuation of any garnishment proceeding" (the "EDO"). (Doc. 15). The Debtor did not disclose on her Schedules of Assets any property that she owned that was the subject to the garnishment. After the Debtor filed her bankruptcy case, Tidewater filed both a response to the Motion to Set Aside and a request for oral argument

(the "Response to the Motion to Set Aside") in the Garnishment Action. Tidewater did not file a motion for relief from stay in the Debtor's bankruptcy case prior to filing the Response to the Motion to Set Aside. On November 24, 2015, Southwest filed a notice of bankruptcy in the Garnishment Action seeking to stay the Garnishment Action due to the Debtor's bankruptcy case. On December 3, 2015, the State Court held a hearing and concluded that the automatic stay did not apply to the proceeding against Southwest because "the Default Judgment entered against [Southwest] on August 18, 2015 is a final judgment which established [Southwest's] independent liability to [Tidewater]." The State Court set the Motion to Set Aside for a future hearing.

On January 15, 2016, Southwest filed the Motion in the Debtor's bankruptcy case which Tidewater opposes. Relying on *In re Johnson*, 479 B.R. 159 (Bankr.N.D.Ga. 2012), the Motion alleges that Tidewater violated the automatic stay by continuing the garnishment action because the Default Judgment was not a final, "unmodifiable judgment" and because any recovery against Southwest would affect the Debtor's liabilities. Southwest further alleged that even if the automatic stay was not violated, Tidewater violated the EDO which it contends is broader than the automatic stay. Tidewater's response claims that the *Rooker–Feldman* doctrine bars this Court from determining whether its actions violated the automatic stay and that Southwest lacks standing to bring the Motion. In addition, it distinguishes the

---

1. Although Georgia has 159 counties, more than one-third of all garnishments in the state are filed in Gwinnett County, more than any other court in the state, making that court well-versed in garnishment law and debtor-creditor rights in general.

2. The Default Judgment against Southwest was in the amount of $19,406.85, plus $208 in court costs.

facts in this case from *Johnson* and claims it did not violate the automatic stay or EDO. It argues that it is not seeking to collect against the Debtor or from property of the estate, only against Southwest on account of its independent liability due to the Default Judgment. The Debtor has not taken a position with respect to the continuation of the Garnishment Action against Southwest.

This Court held a hearing on the Motion at which it heard argument from counsel for both Tidewater and Southwest. At that hearing, the Court concluded the *Rooker–Feldman* doctrine did not apply, that Southwest had standing to bring the Motion, and that the EDO was not broader than the automatic stay. It reserved ruling on whether the automatic stay applied, but annulled the stay to the extent it did apply for the limited purpose of allowing the State Court to rule on the Motion to Set Aside, including allowing an upcoming State Court hearing to go forward and whatever other actions the parties may need to take to preserve their rights as a result of that ruling. [Doc. 43] The State Court held a hearing on the Motion to Set Aside and denied Southwest's request to modify the Default Judgment, but has not yet ruled on Southwest's request to set aside the Default Judgment. This Court held another hearing on the Motion at which it again heard arguments from counsel for Tidewater and Southwest and denied the Motion for the reasons explained on the record and advised the parties that this Order would follow.[3]

**3.** The Court invited the parties to submit any additional arguments after it announced its ruling from the bench because of the time it would take to reduce the ruling to writing.

## Discussion

### 1. *Rooker–Feldman* Doctrine

■■■ Tidewater first argues that the *Rooker–Feldman* doctrine prevents this Court from deciding whether the automatic stay applies to the Garnishment Proceeding against Southwest because the State Court previously concluded that it did not apply. The *Rooker–Feldman* doctrine bars a losing party in state court from seeking review of the state court judgment in lower federal courts. *Nicholson v. Shafe*, 558 F.3d 1266, 1273 (11th Cir.2009). It applies after the state court proceedings have ended and the losing party then files a suit in federal court complaining of an injury caused by the judgment and seeking review and rejection of it. *Id.* In that situation, such review is reserved for state appellate courts or, as a last resort, the U.S. Supreme Court. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir.2009). It does not apply when parallel state and federal litigation are ongoing. *Nicholson*, 558 F.3d at 1273.

■■■ This Court concludes that the *Rooker–Feldman* doctrine does not bar it from determining the applicability of the automatic stay despite the State Court's prior determination. State and federal courts have concurrent jurisdiction to determine whether litigation is stayed pursuant to the automatic stay. Courts have reached differing results on whether the *Rooker–Feldman* doctrine applies to prevent a bankruptcy court from reviewing a state court's determination of whether the automatic stay applies. The Third and Ninth Circuits, along with many bankruptcy courts, have concluded that a bankrupt-

Southwest did file a further brief [Doc. 53] to which Tidewater filed a response [Doc. 54], both of which were considered by the Court prior to entry of this Order.

cy court may review such decisions.[4] These courts rely on the U.S. Supreme Court case *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), which created an exception in bankruptcy cases to the general rule that judgments determining jurisdiction should be corrected through direct review, not collateral attack, because erroneous decisions by state courts as to the applicability of the automatic stay are *void ab initio.* Further, they reason that any incorrect determination that the stay does not apply when it actually does would, in effect, be a modification of the automatic stay—relief that the bankruptcy court has exclusive jurisdiction to provide. Other courts have applied the *Rooker–Feldman* doctrine and found no exceptions for the bankruptcy court to review a state court's determination of the applicability of the automatic stay because state courts have concurrent jurisdiction.[5]

■ This Court joins the line of cases that concludes the *Rooker–Feldman* doctrine does not bar a bankruptcy court from reviewing a state court's determination of whether the automatic stay applies. The automatic stay is one of the most fundamental protections that the Bankruptcy Code provides to debtors. Bankruptcy courts have exclusive jurisdiction to grant relief from the automatic stay. If a state court incorrectly determines that the stay does not apply then it is, in effect, granting relief from the automatic stay, something only bankruptcy courts have authority to

do. Such a result would strip a debtor of the full protection provided in the Bankruptcy Code. In order to determine whether the state court erroneously concluded that the automatic stay does not apply to a particular proceeding, the bankruptcy court must have the ability to review the state court's decision. Requiring a debtor to appeal to a state's appellate courts to determine such an issue would be an unjust result for the debtor who is already before the bankruptcy court to gain the very protection it would then have to litigate in another forum. In addition, judicial proceedings in violation of the automatic stay are *void ab initio* which could render entire proceedings or trials void upon a later determination that the automatic stay was applicable. Bankruptcy courts are specialized courts, well versed in the application of the automatic stay, and must have authority to review a state court's determination of whether the stay applies in order for a debtor to have the full protection of the automatic stay as provided for in the Bankruptcy Code.

The Court notes that this situation is different than one in which the automatic stay is not at issue, such as where the debtor is seeking review of a state court's judgment regarding a different state or federal law issue. For example, in *Ebel v. Ebel (In re Ebel),* 139 Fed.Appx. 26 (10th Cir.2005) (unpublished), after the bankruptcy court granted relief from the automatic stay, the state court awarded the debtor's entire marital estate to his ex-

4. *See In re Gruntz,* 202 F.3d 1074 (9th Cir. 2000); *Raymark Industries v. Lai,* 973 F.2d 1125 (3d Cir.1992); *In re Benalcazar,* 283 B.R. 514 (Bankr.N.D.Ill.2002); *In re Mid–City Parking, Inc.,* 332 B.R. 798 (Bankr.N.D.Ill. 2005); *In re Cox,* 433 B.R. 911 (Bankr. N.D.Ga.2010) (stating in dicta "a decision made by a state court as to whether the automatic stay applies to particular property is

subject to collateral attack in the bankruptcy court.").

5. *See In re Singleton,* 230 B.R. 533 (6th BAP 1999); *In re Siskin,* 258 B.R. 554 (Bankr. E.D.N.Y.2001); *In re Glass,* 240 B.R. 782 (Bankr.M.D.Fla.1999).

wife. The debtor appealed in the state court and eventually requested the bankruptcy court to vacate the state court marital property division order because it relied on a void stipulation and violated his due process rights. *Id.* at 28. In affirming the bankruptcy court's decision, the Tenth Circuit concluded that this challenge to the state court order was barred by the *Rooker–Feldman* doctrine. *Id.* at 29. The court noted that "bankruptcy courts retain jurisdiction to review compliance with the automatic stay," but in *Ebel* there was no indication that the state court violated the automatic stay because the bankruptcy court granted relief from it prior to the state court order. *Id.* Conversely, as to issues of whether the automatic stay was applicable to protect the debtor from litigation without first obtaining relief from the automatic stay, the bankruptcy court must have the ability to review such a determination.

## 2. Standing

Tidewater also argues that Southwest does not have standing to bring the Motion seeking to enforce the automatic stay. It is important to be clear about what it is that Southwest is requesting in the Motion. Southwest is not asking the Court to extend the automatic stay to protect it as a third party, nor is it is asking the Court to provide any more relief than what already exists by way of the bankruptcy filing. Instead, it is requesting that the Court to rule on whether the automatic stay applies to the enforcement of the Default Judgment entered against it in the Garnishment Action.

The constitutional requirements of standing require: (1) the party asserting standing must have suffered actual injury or show imminence of such injury; (2) the injury must be fairly traceable to the conduct; and (3) the requested relief likely will be redressed. *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.,* 816 F.3d 1343, 1348 (11th Cir.2016); *Nat'l Alliance for Mentally Ill, St. Johns Inc. v. Bd. of Cnty. Commissioners of St. Johns Cnty,* 376 F.3d 1292, 1294 (11th Cir.2004); *DiMaio v. Democratic Nat'l Committee,* 520 F.3d 1299 (11th Cir.2008). In addition, a plaintiff must assert an injury that is within the zone of interests of the statute. *Id.* Section 362(k) states that an individual may seek damages for a violation of the stay; it does not limit the ability to seek damages solely to a debtor. Consequently, third parties other than the debtor must have standing to seek damages and enforce the automatic stay. Indeed, courts have consistently held that creditors do have standing to seek enforcement of the automatic stay.

Tidewater points to *In re Clemmer,* 178 B.R. 160 (Bankr.W.D.Tenn.1995), for support that Southwest lacks standing to enforce the automatic stay. In *Clemmer,* a creditor filed a garnishment action in state court against an insurance company in an attempt to reach annuities owned by the debtor. *Id.* The debtor filed bankruptcy, the creditor continued to seek judgment against the insurance company, and the insurance company filed an adversary proceeding claiming the creditor violated the automatic stay. *Id.* The bankruptcy court concluded the insurance company did not have standing to enforce the automatic stay because the purpose of the stay is to protect debtors and creditors. *Id.* The court declined to extend it to all parties who may have some tangential interest to a debtor's bankruptcy case. *Id.*

The Court disagrees and concludes that Southwest does have standing

to seek enforcement of the automatic stay in this case. The automatic stay is a broad protection and garnishment proceedings require an employer to take action against the debtor and possibly also property of the estate. In a garnishment action, a garnishee faces a situation where it will potentially violate the automatic stay if it complies with the state court requirements, or if it does not, risks independent liability or failure to modify or set aside its independent liability. In addition, if it cannot bring such a motion it may end up being involved in litigation that may become *void ab initio*. There is some case law, including in this jurisdiction, albeit which is either distinguishable or incorrect, which arguably supports Southwest's argument that the automatic stay may apply to stay the Default Judgment under these facts. Southwest and parties similar to Southwest must have the ability to seek enforcement of the automatic stay under these circumstances. *See In re Johnson*, 479 B.R. 159, n. 72 (Bankr.N.D.Ga.2012) ("An employer may also have a claim against the Bank for violation of the stay, because it protects creditors and other entities in addition to the Debtor and the estate.").

### 3. Violation of Employer Deduction Order

■ Southwest also argues that even if Tidewater did not violate the automatic stay, it violated the EDO entered in this case based on language in the EDO stating that the "continuation of any garnishment proceeding and any other acts to proceed further with that garnishment proceeding" are stayed. However, the language in the EDO is simply an explanation of § 362 and does not provide protection above and beyond that provided by the automatic stay. If the Court were to conclude otherwise, the result could be that a debtor who has an EDO would receive more protection than a debtor who does not have an EDO. Therefore, the real issue is whether the automatic stay applied to stay the Garnishment Action against Southwest on its independent liability which is addressed below.

### 4. The Automatic Stay

■ The automatic stay is a fundamental protection provided to debtors upon the filing of a bankruptcy case in most instances. It works to give debtors a breathing spell to attempt to reorganize or simply be relieved of the financial pressures that led to the bankruptcy.

■ In the context of a garnishment proceeding, it is straightforward that the automatic stay applies to the extent the creditor seeks to collect against the debtor, the debtor's property or from property of the estate. For example, it stays the garnishment of the debtor's postpetition wages and prevents the disbursing of funds garnished pre-petition to the creditor. *In re Johnson*, 479 B.R. 159, 170 (Bankr.N.D.Ga.2012). Tidewater does not argue otherwise. However, the issue in this case is whether the automatic stay applies to prevent a judgment creditor from enforcing a pre-petition default judgment against the garnishee based on the garnishee's independent liability to it for failure to comply with state garnishment law and, if stayed at all, to what extent or under what circumstances such actions are stayed.

■ By way of explanation, different state garnishment laws provide various ways in which a garnishee may become liable for the debtor's liability to the judgment creditor it if fails to do things required by the garnishment statute or does

things prohibited by the garnishment statute.[6] Of relevance to this case, under Georgia garnishment law, a judgment creditor may file a garnishment action against a third party garnishee in which it seeks to collect its judgment by collecting on a debt the garnishee owes to the debtor. To initiate a garnishment action, the judgment creditor files an affidavit containing certain information with the clerk of any court that has jurisdiction over the garnishee, and the clerk provides a summons of garnishment to be served on the garnishee. O.C.G.A. §§ 18–4–61, 18–4–62. Under most circumstances, the garnishee must file an answer, accompanied with the money or property subject to garnishment, "not sooner than 30 days and not later than 45 days after the service of the summons." [7] *Id.* The judgment creditor has certain rights to file a traverse of the garnishee's answer alleging legal insufficiencies, but if it does not file a traverse then, upon application, it may receive the money[8] subject to garnishment that was delivered to the court by the garnishee. "If the money or other property admitted to be subject to the garnishment is not delivered to the court, judgment shall be entered for the [judgment creditor] and against the garnishee." O.C.G.A. § 18–4–89.

If the garnishee fails to file an answer by the forty-fifth day after service of the garnishment summons, the garnishee is automatically in default, but it may open the default as a matter of right within fifteen days. O.C.G.A. § 18–4–90. After the expiration of the fifteen day period, if the garnishee remains in default, the court may enter a default judgment against the garnishee in favor of the judgment creditor for the entire amount of the creditor's judgment against the debtor. *Id.* If a default judgment is entered, the garnishee may, within sixty days after it received actual notice of the default judgment, file a motion to modify the judgment, which must be accompanied by payment of court costs, to have the amount reduced to "an amount equal to the greater of $50.00 or $50.00 plus 100 percent of the amount by which the garnishee was indebted to the [debtor]." O.C.G.A. § 18–4–91.[9] A garnishee may also be relieved from liability for failure to file an answer properly if certain required information was not pro-

**6.** For a thorough discussion of Georgia garnishment law, see *In re Johnson,* 479 B.R. 159. It also bears mentioning that Georgia garnishment law has recently been ruled unconstitutional for violating due process because it fails to require that a debtor be notified of the existence of exemptions he or she may be entitled to claim with respect to garnished property and the procedure for claiming any such exemptions. *Strickland v. Alexander,* No. 1:12–CV–02735–MHS, 2015 WL 5256836 (N.D.Ga. Sept. 8, 2015).

**7.** The creditor must also provide notice to the judgment debtor of the garnishment action, and the debtor may, by traverse of the creditor's affidavit, challenge the existence of the judgment or amount claimed at any time before a judgment is entered or the money subject to garnishment is distributed. O.C.G.A.

§§ 18–4–64, 18–4–65, 18–4–93. It is only by filing a traverse that the debtor becomes a party to the garnishment proceedings and is entitled to a hearing. O.C.G.A. § 18–4–93. Generally, when the debtor files a traverse, the garnishee is still required to file an answer and deliver the money or property subject to garnishment to the court. O.C.G.A. § 18–4–81. If the debtor or creditor files a traverse, the issues will be tried.

**8.** Or proceeds of property sold in the manner provided by law for sale of property levied under an execution. O.C.G.A. § 18–4–89.

**9.** The same procedures also apply to garnishments pursuant to O.C.G.A. §§ 18–4–113 and 115.

vided in the garnishment summons and a good faith effort was made by the garnishee based on the information provided by the creditor. O.C.G.A. § 18–4–92.1. The parties here do not dispute that the liability of the garnishee to the judgment creditor created by the failure to answer the garnishment under this section is an independent liability from that of the debtor to the judgment creditor.

Courts generally consider the issue of when this independent liability of the garnishee arises to be critical with respect to whether the judgment creditor is stayed from continuing to enforce its claim based only on the garnishee's independent liability when the debtor has filed bankruptcy. Courts addressing this have taken different positions with respect to whether and when the automatic stay prevents a judgment creditor from continuing a garnishment action solely against a garnishee. Some courts conclude it is not a violation of the automatic stay if the judgment creditor continues a garnishment action to collect against the garnishee because the judgment creditor is not seeking to collect a debt from the debtor, property of the debtor or from property of the estate.[10] Other courts have also concluded that § 362 is not implicated when a judgment creditor continues a garnishment action to collect against a garnishee if the garnishee's independent liability was created by

judgment prior to the filing of bankruptcy[11] Finally, some courts conclude that the automatic stay applies to garnishment proceedings even if the judgment creditor seeks to satisfy its debt solely from the garnishee through the garnishee's independent liability.[12]

Southwest relies heavily on *In re Johnson*, a bankruptcy case from this district, which addressed when the automatic stay applies to prevent a judgment creditor from pursuing its independent claim against a garnishee who fails to answer the garnishment summons. 479 B.R. 159 (Bankr.N.D.Ga.2012).

The facts in *Johnson* are substantially and materially different than those before this Court. In *Johnson*, a judgment creditor filed a garnishment action against the debtor's employer. *Id.* at 165. About an hour and a half before the clerk's office closed in the state court where the garnishment action was pending on the final day that the garnishee could file an answer, the debtor filed for chapter 7 bankruptcy relief. *Id.* At the time of the bankruptcy filing, the employer had not filed an answer in the garnishment action. *Id.* In the bankruptcy case, the judgment creditor initially filed a motion for relief from the automatic stay to proceed against the employer to compel payment of the debtor's pre-petition wages into the state court. After learning the employer did not with-

10. *See U.S. v. Allen Bros. of Homer, Inc.*, 36 B.R. 920 (M.D.La.1984); *In re Wasserman*, No. 15 B 24318, 2015 WL 8861107 (Bankr. N.D.Ill. Dec. 16, 2015); *In re Bowers*, 424 B.R. 594 (Bankr.D.D.C.2010); *In re Kanipe*, 293 B.R. 750 (Bankr.E.D.Tenn.2002); *In re Sowers*, 164 B.R. 256 (Bankr.E.D.Va.1994); *In re Waltjen*, 150 B.R. 419 (Bankr.N.D.Ill. 1993); *In re Gray*, 97 B.R. 930 (Bankr.N.D.Ill. 1989).

11. *In re Johnson*, 479 B.R. 159 (Bankr. N.D.Ga.2012); *In re Phoenix Associates Land Syndicate, Inc.*, No. 09-11743, 2010 WL 3945538 (Bankr.E.D.La.2010); *Ganz v. Griffith*, No. CIV.A.95–cv–0574, 1996 WL 122184 (E.D.Pa.1996).

12. *In re O'Connor*, 42 B.R. 390 (Bankr. E.D.Ark.1984); *Matter of Warren*, 7 B.R. 201 (Bankr.N.D.Ala.1980).

hold wages subject to the garnishment,[13] but without actually obtaining relief from the stay, the judgment creditor filed two documents in state court, one of which sought entry of default judgment for more than $210,000. *Id.* The debtor and employer both opposed the motion for relief from stay. *Id.*

*Johnson* adopted the approach by courts that conclude the automatic stay is not implicated when a creditor continues a garnishment action against the garnishee only if the garnishee's independent liability already exists by way of a judgment. *Id.* It concluded that the automatic stay applied to the garnishment action in its entirety on the facts before it, including staying the obligation of the employer to answer or deliver funds to the state court because the employer's independent liability did not exist at the time the bankruptcy case was filed. It did, however, lift the automatic stay to allow the judgment creditor to proceed with its state law rights and remedies against the garnishee on account of the garnishee's failure to withhold property subject to the garnishment prior to the petition, but only after giving the garnishee additional time to answer the garnishment. *Id.* at 177. In deciding to lift the automatic stay, *Johnson* stated: "We now know that the Employer did not withhold earnings from the Debtor as the garnishment law requires and that, therefore, the Bank's prosecution of the garnishment action is the prosecution of an independent claim against the Employer and does not involve property of the estate." *Id.* Similarly, later on, *Johnson*

states: "The undisputed facts show that the Bank's claim against the Employer does not implicate property of the estate, property of the debtor or a claim against the Debtor. Under these circumstances, continuation of the stay does not serve a bankruptcy purpose." *Id.* at 179.

It seems to this Court that based on the specific and limited facts before it, *Johnson* could have simply ruled that automatic stay applied to the garnishment action in its entirety because the time for the garnishee to answer had not run when the petition was filed and then modified the stay to allow the judgment creditor to proceed with its state law rights against the garnishee along the lines it did. Instead, *Johnson* went further and opined that the independent liability of the garnishee exists only when an "unmodifiable judgment" in the garnishment action exists and that garnishment actions in their entirety are stayed until such time. In the context of a default judgment, a fact situation not before it, *Johnson* defined the term "unmodifiable" to mean a final judgment after the expiration of the statutory sixty days within which a garnishee can file a motion to modify the default judgment provided for in O.C.G.A. § 18–4–91. *Id.* at 176–77.

Unlike *Johnson,* this Court has before it the specific fact that the Default Judgment was entered pre-petition[14] and, after considering the legal implications of that fact, this Court disagrees with *Johnson's* determination that a garnishee's independent liability pursuant to a prepetition default

13. Under Georgia law the employer's failure to withhold earnings may result in a garnishee's independent liability, but no judgment had been entered when the bankruptcy case was filed. *In re Johnson,* 479 B.R. at 177.

14. The Motion to Set Aside was filed less than 10 days before the bankruptcy was filed, which motion had not yet been ruled upon by the State Court at the time of the bankruptcy filing.

judgment is somehow protected by the automatic stay until the judgment becomes unmodifiable and concludes that the automatic stay does not stay the actions of Tidewater against Southwest because (1) the Default Judgment entered pre-petition against Southwest is a final judgment which is enforceable under state law despite the modification period, *see A.R. Weeks v. High Point Sprinkler Co.*, 125 Ga.App. 511, 188 S.E.2d 144, 145 (1972)(fact that default judgment may be modified does not prevent it from being final),[15] (2) the Default Judgment against Southwest is only modifiable, after payment of the costs—which were not paid here, as to the amount of the liability, not the liability itself, under O.C.G.A. § 18–4–91 because it cannot be reduced to less than $50.00,[16] (3) the Debtor is not even a party to this Garnishment Action under Georgia law because she did not file a traverse, which traverse should have been filed before the entry of the Default Judgment, (4) Tidewater is not taking action to collect a debt of the Debtor or property of the Debtor or the estate, but rather pursuing an independent claim against Southwest, a non-debtor and (5) had Southwest been in possession of property subject to the garnishment after the filing of the Debtor's bankruptcy case, which it was not, actions with respect to that property would have been protected by the automatic stay.

The applicable subsections of § 362(a) that are involved in the determination of this issue are the following:

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor ... or to recover a claim against the debtor;

(2) the enforcement, against the debtor or property of the estate, of a judgment ...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(6) any act to collect, assess, or recover a claim against the debtor ...

This Court does not find that any of these provisions of § 362(a) have been violated by Tidewater seeking to enforce its rights under the pre-petition Default Judgment against Southwest. *Johnson*, however, basically finds that the proceeding against the garnishee on its independent liability, before an "unmodifiable" judgment is entered, is one to collect a debt of the debtor from property of the debtor based on its interpretation of the Georgia law giving a garnishee the opportunity to reduce its liability.

This code section to which *Johnson* refers, O.C.G.A. § 18–4–91, provides

When a judgment is rendered against a garnishee under Code Section 18–4–90, on a motion filed not later than 60 days from the date the garnishee receives actual notice of the entry of the judgment against garnishee, the garnishee may, upon payment of all accrued costs of court, have the judgment modified so that the amount of the judgment shall be reduced to an amount equal to the greater of $50.00 or $50.00 plus 100 percent of the amount by which the gar-

---

**15.** The State Court also referred to the Default Judgment as being a final judgment in this case.

**16.** Consequently, the judgment creditor is at least entitled to receive the reimbursement of court costs plus $50.00 from the garnishee.

nishee was indebted to the defendant from the time of service of the summons of garnishment through and including the last day on which a timely answer could have been made for all money, other property, or effects belonging to the defendant which came into the garnishee's hands from the time of service of the summons through and including the last day on which a timely garnishee answer could have been made and, in the case of garnishment of wages, less any exemption allowed the defendant by law.

*Johnson* finds two features of this portion of the Georgia statute to be "critical in the analysis of application of the automatic stay." *Id.* at 176. First, it says, "it is obviously a proceeding to collect a debt of the debtor." *Id.* This Court disagrees. The proceeding against the garnishee on account of its independent liability is no more of a proceeding to collect a debt of the debtor than a suit against a typical[17] guarantor or co-debtor and a suit against a typical guarantor or co-debtor is *not* stayed by section § 362. *In re Williams*, 851 F.2d 119, 121–22 (4th Cir.1988); *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194 (6th Cir.1983)("It is universally acknowledged that the automatic stay ... may not be invoked by entities such as sureties, guarantors, co-obligors or others with a similar legal or factual nexus to the ... debtor."); *CresCom Bank v. Terry*, 499 B.R. 494 (D S C.2013); *In re Colony Beach*, No. 8:13–bk–348KRM, 2015 WL 1281825 (Bankr.M.D.Fla. Mar. 18, 2015);

*In re Benbo of Ga., Inc.*, No. 91–10931, 1992 WL 12004318 (Bankr.S.D.Ga.1992). In such a situation, the typical co-debtor or guarantor could end up paying a debt on which the debtor is also obligated, but that fact situation is not within the scope of § 362(a)(1) or (6).[18] Because Southwest's obligations to Tidewater are independent of the Debtor's obligations to Tidewater at this point, and Tidewater is not obligated to pursue the Debtor further to collect against Southwest, these subsections are not implicated.

Second, *Johnson* says, "its purpose is to collect the debt from property of the debtor, specifically, a debt the garnishee owes or property in its possession. By permitting the garnishee to limit is liability to the actual amount subject to garnishment, these provisions contemplate that the garnishee may satisfy its obligations from the debtor's property." *Johnson*, at 176. Again, this Court disagrees, particularly in the instance we have before the Court where no property of the Debtor was withheld by Southwest and there is no property of the Debtor or the estate to withhold subject to the garnishment so Tidewater's independent claim against Southwest cannot be satisfied from the Debtor's property or property of the estate. The purpose of this portion of the Georgia law is not to collect the debt from the property of the debtor, but to hold a garnishee accountable for its failure to comply with the law while also giving the garnishee the opportunity to reduce its liability to what it should have withheld had it complied with the

17. By typical, this Court means a guarantor or co-obligor who is primarily liable on the debt such as one would find in the more common guaranty of payment as opposed to the rarely seen guaranty of collection.

18. Whether the co-obligor or garnishee has a claim for subrogation does not affect the anal-

ysis because it does not create additional liability on the part of the debtor, but potentially only a different obligee. The Court is making no determination here as to whether Southwest has any rights of subrogation if it pays the default judgment against it.

law. It is true that in moving to modify a default judgment the garnishee could seek to deliver property it is holding subject to the garnishment into the registry of the state court. The delivery of that money into the registry of the state court for the purpose of enabling the judgment creditor to be paid that money would generally be stayed by the automatic stay upon the filing of a debtor's bankruptcy case.[19] In this instance, however, it would be an action with respect to the debtor's property taken by the garnishee, not the judgment creditor, for the primary purpose of reducing the garnishee's debt to the judgment creditor. The judgment creditor does not care from whom it gets paid or whether its payment comes from the garnishee's own property or property of the debtor which the garnishee is holding.

That is clearly not the fact situation before this Court though. In the case before this Court, Southwest was merely moving to reduce its liability under the statute to what it should have withheld rather than also seek to pay money into the registry of the State Court because the wages it should have withheld were paid out and no longer available. And even if Southwest never held wages or property subject to the garnishment, the protections offered to it by the Georgia garnishment laws would only allow it to reduce the judgment, after payment of costs, to $50.00 because the judgment is reduced to the greater of $50.00 or $50.00 plus the dollar amount the garnishee should have withheld. The liability, as we can see, cannot be zero because it has to be at least $50.00, plus the court costs have to be paid.

*Johnson* concludes that until the final judgment[20] is entered establishing the garnishee's independent liability, "the garnishment action remains an action to collect against the debtor, which paragraph (6) of § 362(a) prevents, and an action against property of the estate, which paragraph (3) stays." *Id.* at 177. But in later paragraphs, including the very next one, *Johnson* states: "We now know that the Employer did not withhold earnings from the Debtor as the garnishment law requires and that, therefore, the Bank's prosecution of the garnishment action is the prosecution of an independent claim against the Employer and does *not* involve property of the estate." *Id.* (emphasis added) Similarly, later on, *Johnson* states: "The undisputed facts show that the Bank's claim against the Employer does not implicate property of the estate, property of the debtor or a claim against the Debtor. Under these circumstances, continuation of the stay does not serve a bankruptcy purpose." *Id.* at 179. Those are the very facts before this Court, except the additional fact that a final judgment had been entered against Southwest in favor of Tidewater before the filing of this bankruptcy case. Because the judgment creditor in *Johnson* was eventually seeking to collect on an independent claim that was not a claim against the debtor, property of the debtor or against property of the estate, *Johnson* lifted the automatic stay to allow the judgment creditor to proceed

---

19. The scope of the stay in this regard is generally limited by the provisions of § 362(c)(3) and (4) which limit the applicability of the automatic stay in cases filed by debtors who have had one or more cases dismissed within the year proceeding the most recent bankruptcy case.

20. The State Court expressly found that the Default Judgment was a final judgment in the matter before this Court.

against the garnishee. *Johnson* found that it was necessary to lift the stay because the time to answer, or for that matter, to file a traverse, had not yet expired when the bankruptcy case was filed so the stay applied to the action at that time. That is not the situation before this Court because the Default Judgment had already been entered by the time the Debtor filed for bankruptcy. The facts of the case before this Court, even as acknowledged by *Johnson*, do not implicate the automatic stay because Tidewater's claim is not against the Debtor, property of the estate, or property of the Debtor. If it does not fall into any of those categories, then the automatic stay simply does not apply, regardless of whether or not the Default Judgment was modifiable.

The potential modifiability of the Default Judgment establishing Southwest's independent liability is not relevant because a final judgment establishing Southwest's independent liability to Tidewater had already been entered before the bankruptcy case was filed and no claim against the Debtor, property of the Debtor or the estate was involved. If, as *Johnson* seems to acknowledge, the collection of this claim on Southwest's independent liability is not an action to recover from either the debtor, property of the debtor or property of the estate, the mere modifiability of a final judgment entered pre-petition against it, a non-debtor, cannot somehow bring this claim within the scope of § 362(a). The Default Judgment was a final judgment that was enforceable upon its entry. Its finality was not delayed until the expiration of the modification period. The mere passage of the modification period does not change the underlying character of whether or not the action is an attempt to collect a debt of the Debtor or property of the Debtor or the estate.

This Court does not necessarily disagree with *Johnson* to the extent it holds that, in general, the garnishee's independent liability needs to exist before the bankruptcy petition is filed in order for the automatic stay to be inapplicable, but this Court does disagree with *Johnson's* determination of when the independent liability first arises. *Johnson* seems to equate the determination that independent liability exists with the determination of when the specific, final amount of that independent liability can no longer be modified. The purpose of the automatic stay is not furthered by equating those two. Once it is determined that independent liability exits, regardless of the amount, such as through the entry of a default judgment, the automatic stay is not applicable to a state court proceeding to determine the amount of the garnishee's independent liability, particularly when the garnishee is not holding any property of the debtor that was the subject of the garnishment: it is not an act against the debtor, the debtor's property or property of the estate that is covered by the scope of any of the subsections under § 362(a), nor, to the extent it is relevant, does it affect the administration of the estate or the debtor's discharge. In this case, the independent liability of the garnishee was clearly determined before the bankruptcy petition was filed. The only questions at the time of the bankruptcy filing were whether the liability would be reduced to some amount not less than $50.00—which was not possible given that Southwest's request for a reduction in liability was deficient on its face for failure to pay costs—or whether the Default Judgment could be vacated if the State Court determined Tidewater failed to comply

with the requisite state law procedures.[21] Because of that, the automatic stay simply is not applicable here.

As part of its discussion, *Johnson* states:

[A] garnishee's independent liability arises only as a remedy for failure to comply with the process, either by default after expiration of a statutory grace and modification periods or because the garnishment court determines on the merits that the garnishee has funds or property subject to garnishment that it did not deliver to the garnishment court. The imposition of independent liability on the garnishee is not the objective of the garnishment proceeding. Rather, it exists only as a remedy for failure to comply with the garnishment laws by delivering the debtor's property to the garnishment court." *Id.*

The first part of this comment is not consistent with Georgia law as to when the garnishee's independent liability generally arises, which liability actually arises no later than the entry of a default judgment; rather, it appears to be a comment on when the specific amount of the garnishee's liability is finally fixed, the latter of which is not a concern of the automatic stay. With respect to the remainder of the comment, although the garnishee's independent liability may not be the primary objective of the garnishment proceeding at its commencement, the potential for liability is an integral part of the statutory scheme necessary to obtain a garnishee's compliance with the statute. From a reading of state court decisions on that portion of the statutory scheme, it is a remedy

that is vigorously applied and enforced by state courts. Furthermore, this Court does not believe the intent of the Georgia legislature in this regard, whether or not correctly interpreted by *Johnson*, is relevant to the determination of whether the automatic stay applies to this matter because it does not change the fact that enforcement of this Default Judgment arising from Southwest's independent liability is not an action to collect from the Debtor, property of the Debtor or property of the estate and, therefore, the automatic stay simply does not apply. Congress established the policy of what matters are stayed upon the filing of a bankruptcy petition. Not included among the matters to be stayed are proceedings regarding the liability of one non-debtor to another non-debtor based on the entry of a default judgment in a matter in which the debtor is not a party nor is the debtor's property at risk.

One result of *Johnson* is to unnecessarily burden the judgment creditor with having to obtain an order from the bankruptcy court granting relief from the automatic stay with respect to all garnishment-related default judgments served on the garnishee less than 60 days before the bankruptcy petition was filed, and even longer if a motion to modify is pending, even if no property of the debtor or the estate is at issue, a situation which *Johnson* itself acknowledges does not implicate the automatic stay. Another result of *Johnson* is to extend the protection of the automatic stay to a non-debtor in a situation where the proceeding does not involve a claim against the debtor, or property of the debtor or the estate. This is neither required by the plain language of § 362(a)

---

**21.** Although the Default Judgment could be vacated on technical grounds for Tidewater's failure to comply with the garnishment statute, the State Court can determine that and, indeed, should be the court to determine that. That battle is between Tidewater and Southwest and does not implicate any of the subsections in § 362(a).

nor is it consistent with the policy objectives behind the automatic stay.

■ Whether the automatic stay applies to a given situation is based on the specific facts of the case. Because the judgment creditor with a pre-petition default judgment has an independent claim against the garnishee that, on its face, does not implicate any of the provisions of § 362(a), particularly when the debtor has not filed a traverse of the garnishment[22] nor disclosed an interest in any property that was subject to the garnishment in the schedule of assets filed in her bankruptcy case, it seems to this Court that the proper approach here is for the judgment creditor to be able to pursue its default judgment against the garnishee—but not property of the debtor or the estate—without regard to the automatic stay. If either (a) the garnishee files a motion to modify the judgment in the garnishment case which identifies the property of the debtor which should have been withheld and the property which is in its possession that was subject to the garnishment or which had already been turned over to the trustee and notifies the garnishment court that the debtor is in bankruptcy or (b) the debtor or trustee file a notice with the garnishment court identifying property held by the garnishee which is subject to the automatic stay,[23] the state court at that point would be aware that the proceeding should be stayed with respect to the collection of the claim from property of the debtor or the estate, but the automatic stay would not apply to the ability of the judgment creditor to recover from the garnishee, at the very least, its costs plus $50. The state court could then determine, without regard to the automatic stay, what consequences the garnishee should face for failing to comply with the state garnishment laws, including determining the amount of the liability of the non-debtor garnishee. It is within the domain of the state courts, not the bankruptcy courts, to determine the proper remedy for a non-debtor's failure to comply with the state's garnishment laws and determine what the amount of the liability should be between the judgment creditor and garnishee irrespective of whether the judgment debtor has filed for bankruptcy, provided that remedy does not interfere with the bankruptcy court's exclusive jurisdiction over the debtor's property or claims against the debtor. In a situation where a garnishee subject to a default judgment is holding property that was subject to a garnishment, the state court can properly determine to what extent, if any, the liability of the garnishee to the judgment creditor should be reduced because the automatic stay prevented the payment of that property into the registry of the state court.[24] The bankruptcy court

22. This Court in this Order is not attempting to deal with every fact situation that can arise in the context of a garnishment proceeding. If the debtor files a traverse of the garnishment, it may very well be that the entire garnishment proceeding should be subject to the automatic stay at that point, but that issue is reserved for a future case.

23. No such notice was filed by the debtor or trustee in this matter, which is another factor, albeit by no means a conclusive one, that the automatic stay should not apply here because it is an indication that the debtor has no interest in the proceeding between the two non-debtors. The Court is not suggesting that litigation is only stayed if such notices are filed. Actions that are subject to the automatic stay are stayed, and actions taken in violation of the stay are void, regardless of whether notice is given. The Court recognizes that debtors often fail to file these types of notices.

24. For example, if the debtor had $50,000 in its bank account that was subject to a garnishment with respect to a $100,000 judgment, but it was not frozen upon service of the summons of garnishment and a default

has no reason and perhaps no jurisdiction to meddle in that determination.[25]

If such a motion or notice is filed, or if the judgment creditor is otherwise aware that the garnishee is holding property of the debtor or the estate that is subject to the garnishment, then the judgment creditor should file a motion in the bankruptcy court for relief from the automatic stay or the debtor or trustee should file a motion for turnover so the bankruptcy court can determine, after notice to the parties, the parties' respective rights to the property held by the garnishee that was subject to the garnishment. If no motion or notice is filed in the state court, but the garnishee is still holding property that was subject to the garnishment, the judgment creditor should be able to proceed to enforce its independent claim against the garnishee without regard to the automatic stay, but either the judgment creditor or the garnishee would have to obtain relief from the automatic stay in the bankruptcy case to take any action with respect to the property of the debtor or the estate. This result is not only consistent with § 362(a), but also relieves the parties from the burden of unnecessary stay litigation, which only serves to expand their litigation into multiple courts.

This Court also rejects Southwest's argument that the "unmodifiable judgment" rule created by *Johnson* creates certainty both procedurally and as to the amount of the debtor's debt. Contrary to Southwest's position, the "unmodifiable judgment" standard creates no certainty at all. This Court cannot determine under the *Johnson* "unmodifiable judgment" standard whether the Default Judgment before it is unmodifiable or not because Southwest did not pay the costs with the Motion to Set Aside, a clear prerequisite to being entitled to modify the amount of the judgment. Should a non-debtor who is not holding property of the debtor subject to a garnishment be protected by the automatic stay by the filing of facially defective pleading, albeit a timely filed one, in a state court proceeding wherein the relief against it is sought by another non-debtor to whom it has independent liability? Of course not. The same can be said of the other portion of the relief sought by Southwest concerning the setting aside of the Default Judgment. Should a non-debtor who is not holding property of the debtor subject to a garnishment be protected by the automatic stay by merely filing a motion to set aside a judgment in a state court proceeding wherein relief against it is sought by another non-debtor to whom it has independent liability? Of course not. This type of request is a routine matter that can be determined by the Georgia state courts without there being any negative impact on the bankruptcy estate and the debtor's financial rehabilitation.

Furthermore, to the contrary, the garnishee may still have other options by which it may seek to delay or eliminate its independent liability, so uncertainty could

---

judgment was entered against the garnishee, and by the time the bankruptcy was filed only $20,000 remained in the account, the state court should be permitted to determine whether the garnishee should be liable to the judgment creditor for $100,000, $30,000, $50,000, or some other amount, plus the costs and $50.00.

**25.** This Court realizes that the state court may nevertheless stay the proceedings against the garnishee in this situation pending a determination by the bankruptcy court of the treatment of the judgment creditor's claim, including its garnishment lien, but that stay would be on account of its own case management and not on account of the automatic stay.

still remain. For example, there is the potential delay from an appeal between the non-debtor parties arising from these rather ordinary state court proceedings that do not affect the bankruptcy estate and the debtor's financial rehabilitation. The garnishee may also have rights under O.C.G.A. § 9–11–60 to modify the judgment. *Lewis v. Capital Bank*, 717 S.E.2d 481, 311 Ga.App. 795 (2011) This raises the question of why should the modifiability of the judgment under O.C.G.A. § 18–4–91 be treated differently than modification under O.C.G.A. § 9–11–60 for purposes of the applicability of the automatic stay. To the extent certainty is relevant, there seems to be more certainty by acknowledging that the independent liability exists no later than the entry of the default judgment and no stay applies, particularly when the garnishee is not holding any property subject to the garnishment, as opposed to waiting for an otherwise final default judgment to become "unmodifiable," whenever that may be.

The Court also fails to accept Southwest's argument that the alleged uncertainty of the amount of the debt in this situation is relevant in the context of determining whether or not the automatic stay is applicable. It is similar to when the amount of the debt changes because of a payment by a co-debtor or guarantor or when a secured creditor's claim gets reduced or converted to an unsecured deficiency claim on account of a sale or other disposition of collateral. These are routine matters that are administered in bankruptcy cases all of the time.

When a default judgment has been entered against the garnishee pre-petition and the garnishee is not holding property of the debtor that was subject to the garnishment, it is clear that the continuation of a garnishment proceeding against the garnishee is not an attempt to collect anything from the debtor or the estate, but only to assess and collect against the garnishee based solely on its independent liability. Regardless of whether or not the passage of the sixty days has occurred or whether the default judgment is otherwise modifiable, a final judgment against the garnishee still exists and the Court fails to see how the passage of that time matters in the context of the applicability of the automatic stay under § 362(a). Regardless of whether the default judgment is eventually modified or set aside, the proceeding still remains stayed as to the collection against the debtor, the debtor's property or property of the estate, but the attempt to collect against the garnishee based on its independent liability, particularly one who is not holding any property of the debtor subject to the garnishment, is not such an action. The Court sees no reason why the automatic stay would apply in such an instance.

Therefore, this Court concludes that if a default judgment is entered against a garnishee prepetition, that garnishee's independent liability exists and, upon the debtor's bankruptcy filing, the matters relating to that default judgment, including any rights or defenses the garnishee may have to reduce or vacate the judgment, will not be stayed by § 362 except with respect to that portion of the proceeding regarding any property of the debtor or the estate held by the garnishee that was the subject of the garnishment, regardless of whether a motion to modify or set aside is pending.

### Conclusion

Accordingly, for the reasons stated herein, it is hereby

ORDERED that Southwest's Motion to enforce the automatic stay is DENIED.