[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11389

_____

In re: ASSET ENHANCEMENT, INC.,

Debtor.

_____

ROBERT A. SWEETAPPLE,

Plaintiff - Appellant,

*versus*

ASSET ENHANCEMENT, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-60777-RS,
Bkcy No. 0:20-bk-15782-PDR

_____

Before ROSENBAUM, BRANCH, and BRASHER, Circuit Judges.

ROSENBAUM, Circuit Judge:

Juliet was generally right that a rose by any other name smells as sweet.[1]  But Juliet's observation does not apply here.

Depending on the name—or more specifically, the context—an order that leaves nothing to be determined in a proceeding but the amount of attorneys' fees to be awarded may or may not be a final, appealable order under our precedent.  To be sure, most orders that resolve everything but the amount of attorneys' fees to be awarded qualify as final, appealable orders.  But we've said that a contempt order that contemplates imposing attorneys' fees as a sanction for contempt but does not specify the amount of any such award is not a final, appealable order.  Rather, the final order in that situation is the later order that awards the specific amount of fees.  The earlier order that awards fees generally without indicating the amount awarded then merges into the later order, and they both become appealable.

---

[1] *See* William Shakespeare, Romeo and Juliet act 2, sc. 2.

When we apply that rule here, we conclude that Plaintiff-Appellant Robert A. Sweetapple timely appealed the bankruptcy court's order finding him in contempt—even though the bankruptcy court entered that order more than fourteen days before Sweetapple appealed. Sweetapple's appeal was timely because he filed it within the fourteen-day period following the bankruptcy court's entry of its order sanctioning Sweetapple with a specific amount of attorneys' fees for the contempt the bankruptcy court found in its earlier order. Because the district court reached the opposite conclusion, we vacate the district court's dismissal of this aspect of Sweetapple's appeal and remand for the district court to consider the appeal in the first instance.

## I.    BACKGROUND

This case has a somewhat long and messy history. It originates out of a Florida Public Records Act request that Asset Enhancement made to the Town of Gulfstream. After the Town of Gulfstream responded to that request in what Asset Enhancement deemed an incomplete and delayed way, in 2014, Asset Enhancement filed an action in Palm Beach Circuit Court against Gulfstream. Because of Gulfstream's alleged delay, Asset Enhancement argued, it was entitled to recover attorneys' fees and reasonable costs associated with enforcement of the record request.

Gulfstream and Asset Enhancement eventually settled the matter with final judgment entered against Gulfstream. But the parties left the amount of attorneys' fees and costs for the state

court to determine.  The state court held an evidentiary hearing on that matter and set final argument for May 28, 2020.

A day before final argument occurred, though, Asset Enhancement filed its Chapter 11 bankruptcy petition.  It then notified the state court of its bankruptcy filing and asked the state court to confirm that the May 28 hearing would not proceed because of the automatic stay. [2]  Gulfstream's counsel emailed a legal memorandum to the state court, arguing that the automatic stay did not apply.  After hearing arguments from both Gulfstream and Asset Enhancement, the state court concluded that Asset Enhancement's filing of its bankruptcy petition did not stay the attorneys' fees proceeding because Asset Enhancement, as the Debtor, initiated the action.  So the state court held the May 28 hearing on the issue of attorneys' fees.

Gulfstream, through its attorney (and now-Plaintiff-Appellant) Robert A. Sweetapple, argued that Asset Enhancement was not entitled to attorneys' fees for two reasons: (1) its fees resulted from an orchestrated scheme to abuse Florida's Public Records Act, and (2) in any case, its fees were unreasonable.  Instead, Sweetapple asserted, the state court should sanction Asset Enhancement for its actions and reduce any attorneys' fees award to basically $0.

---

[2] "The automatic stay is a fundamental protection" that the Bankruptcy Code "provide[s] to debtors upon the filing of a bankruptcy case in most instances. It works to give debtors a breathing spell to attempt to reorganize or simply be relieved of the financial pressures that led to the bankruptcy." *In re Cole*, 552 B.R. 903, 911 (Bankr. N.D. Ga. 2016).

Despite its decision to proceed with arguments, the state court decided to wait to rule on the issue of attorneys' fees until the conclusion of the bankruptcy proceedings.

### A. Bankruptcy Court Proceedings

Meanwhile, back in the bankruptcy court, about six weeks after the May 28 state-court hearing, Asset Enhancement filed its Amended Motion for Contempt for Violation of the Automatic Stay and For Sanctions ("Motion for Contempt"). According to Asset Enhancement, Gulfstream and Sweetapple violated the automatic stay by (1) convincing the state court to proceed with the May 28 hearing and (2) requesting sanctions against Asset Enhancement. As relief, Asset Enhancement sought damages for Gulfstream and Sweetapple's alleged willful violation of the automatic stay:

> [Asset Enhancement] respectfully requests that this Court: (1) grant the Motion; (2) find that [Gulfstream] and Sweetapple knowingly and willfully violated the automatic stay in pursuing the sanctions claim and the setoff of the sanctions claim; (3) compel [Gulfstream] and Sweetapple to file with the trial court a complete waiver of any sanctions claim; (4) enter a monetary sanction against [Gulfstream] and Sweetapple for reasonable costs associated with filing and prosecuting this Motion; (5) enter an award of punitive damages against them joint and several; and (6)

grant any further or additional relief as this Court
deems necessary or appropriate.

Mot. for Contempt 8, Bankr. ECF No. 32.

The bankruptcy court granted Asset Enhancement's motion
in part ("Contempt Order").

First, the bankruptcy court determined that the automatic
stay applied to the state-court action even though Asset Enhancement
instituted the action. That was so, the bankruptcy court reasoned,
because Gulfstream sought offensive relief when it argued
in support of sanctions against Asset Enhancement. Based on Gulfstream's
efforts to obtain that relief in the state court, the bankruptcy
court held that Gulfstream violated the automatic stay. And
the bankruptcy court found Sweetapple, as Gulfstream's counsel,
personally liable for violating the stay.

Then, the bankruptcy court addressed the remedies for the
violation of the automatic stay. The court explained that because
Asset Enhancement was a corporation, 11 U.S.C. § 105, which generally
covers reorganizations involving corporations and partnerships
and creates a statutory contempt power in bankruptcy proceedings,
supplied the bankruptcy court's authority to award damages.

Next, the bankruptcy court considered each form of damages
that Asset Enhancement requested. In so doing, the bankruptcy
court held that Asset Enhancement was not entitled to compensatory
damages because it did not put forth any evidence to
support such damages. The bankruptcy court also declined to

award injunctive relief, reasoning that the automatic stay, at bottom, is an injunction, so injunctive relief is neither necessary nor appropriate to protect the property of the estate. And as for punitive damages, the court concluded that Asset Enhancement wasn't entitled to them because the record indicated no type of egregious or malicious misconduct nor significant and foreseeable harm. But the bankruptcy court did award Asset Enhancement reasonable attorneys' fees and costs for the filing and prosecution of its Motion for Contempt.

Sweetapple timely moved for reconsideration of the bankruptcy court's Contempt Order. The bankruptcy court denied the motion ("Reconsideration Order").

Consistent with the Contempt Order, Asset Enhancement timely moved for specific attorneys' fees. And after the parties agreed to the amount of attorneys' fees, the bankruptcy court entered an order awarding Asset Enhancement $12,931.50 for attorneys' fees and costs incurred in connection with the Motion for Contempt ("Fee Order").

Sweetapple and Gulfstream consented to the Fee Order on the amount of attorneys' fees and costs Asset Enhancement sought "solely" "to avoid the necessity of a contested hearing." Fee Order 2, Bankr. ECF No. 120. The Fee Order clarified that Sweetapple's consent to the order did not "constitute a waiver or admission as to any aspect of the Contempt Order and/or Order Denying Reconsideration. [The] Order [was] expressly entered without prejudice

8                    Opinion of the Court                    22-11389

to [ ] Sweetapple's right to appeal any aspect of the Contempt Order and/or the Order Denying Reconsideration." *Id.*

After the bankruptcy court entered the Fee Order, Gulfstream paid Asset Enhancement's attorneys' fees.

### B. *District Court Proceedings*

Sweetapple then filed his Notice of Appeal in the district court. In it, he challenged the Contempt Order, the Reconsideration Order, and the Fee Order. Asset Enhancement moved to dismiss Sweetapple's appeal for lack of jurisdiction.

The district court agreed and dismissed Sweetapple's appeal. First, the district court determined that it lacked jurisdiction to hear Sweetapple's appeal of the Contempt and Reconsideration Orders because the appeal was untimely. In support of that conclusion, the district court reasoned that these orders were final orders and were therefore immediately appealable, even though they left the amount of attorneys' fees unresolved. In reaching this conclusion, the court relied on Supreme Court precedent holding that the issue of attorneys' fees is collateral to the merits, and a decision on the merits is immediately appealable even if an issue as to the attorneys' fees remains unresolved.

And because the Bankruptcy Rules provide fourteen days to appeal from the entry of a final decision or order, and Sweetapple failed to appeal within that fourteen-day window from the entry of the Contempt and Reconsideration Orders, the district court ruled his appeal untimely. As a result, the district court concluded it lacked jurisdiction and dismissed the appeal.

Second, the district court concluded that Sweetapple lacked standing to challenge the Fee Order.  Though Sweetapple had timely filed the appeal of the Fee Order, the district court reasoned, he had consented to the entry of the Fee Order, so he could not, on appeal, challenge the fees awarded.  The district court did identify one possible basis for an appeal of the Fee Order, though:  if the award deviated from the parties' agreement.  But Sweetapple did not allege that to be the case.  So the district court dismissed Sweetapple's appeal of the Fee Order.

Sweetapple now appeals to us the dismissal of his appeal to the district court of his challenges to the Contempt and Reconsideration Orders.[3]

## II.    STANDARD OF REVIEW

In the bankruptcy context, we sit as a "second court of review." *In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004) (quoting *In re Club Assoc.*, 951 F.2d 1223, 1228 (11th Cir. 1992)).  That

---

[3] Sweetapple's Notice of Appeal also appeals the dismissal of the Fee Order. Sweetapple's briefing includes no argument challenging the district court's dismissal of his appeal of the Fee Order, though.  As a result, Sweetapple has abandoned any challenge to the Fee Order. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).  But even had Sweetapple not forfeited this issue, we would have affirmed.  That's so because Sweetapple, through his consent to the Fee Order, waived any objection he otherwise may have had to the amount of fees that order awarded.  So the district court correctly dismissed that appeal. *See Hofmann v. De Marchena Kaluche & Asociados*, 657 F.3d 1184, 1187 (11th Cir. 2011) ("As a general rule, a party has no standing to appeal an order or judgment to which he consented.").

role requires us to "examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standards of review as the district court." *Id*. Generally, we review de novo legal conclusions by either the bankruptcy court or the district court. *In re Fin. Federated Title & Tr., Inc.*, 309 F.3d 1325, 1328–29 (11th Cir. 2002). As for the bankruptcy court's findings of fact, we review those for clear error. *In re Optical Techs., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005).

### III.    The district court had jurisdiction over Sweetapple's appeal of the contempt order.

The district court, sitting as the first court of review, concluded Sweetapple filed his appeal of the Contempt Order too late, so it lacked jurisdiction to consider the appeal. We review de novo the district court's determination that it lacked jurisdiction. If the district court lacked jurisdiction, so do we. And we must dismiss an appeal in those circumstances. After all, "we are a court of limited jurisdiction, [and] adjudicating an appeal without jurisdiction would 'offend[ ] fundamental principles of separation of powers.'" *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (alteration in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

In bankruptcy cases, we have jurisdiction to hear appeals of "final decisions, judgments, orders, and decrees[.]"[4]  28 U.S.C.

---

[4] The rules about what qualifies as "final" are more flexible in bankruptcy because a bankruptcy case is "'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the

§ 158(d)(1). As relevant here, a "final decision" is one "by which a district court disassociates itself from a case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (citation omitted). "Final decisions" "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988) (citation omitted). The final-decision rule prevents "piecemeal, prejudgment appeals that would undermine efficient judicial administration and encroach upon the prerogatives of [trial] judges." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (cleaned up).

That said, the Supreme Court has held that, for purposes of determining whether an order is a "final decision" under 28 U.S.C. § 1291 (the statute endowing courts of appeals with jurisdiction of appeals from all "final decisions of the district courts"), an outstanding attorneys' fees issue does not preclude an otherwise-final decision from being a "final decision." *Budinich*, 486 U.S. at 202. In reaching this conclusion, the Supreme Court expressly considered whether this rule should be different if the attorneys' fee issue might be considered part of the merits of the case. *See id.*

---

debtor." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (citation omitted). So an order in a bankruptcy case is "final" for purposes of § 158(d)(1) (and therefore immediately appealable) if the order "finally dispose[s] of discrete disputes within the larger case." *Id.* (citation omitted). The added flexibility in what constitutes a "final order" in bankruptcy (but not outside the bankruptcy context) does not factor into the analysis here, so we do not further discuss that flexibility.

It decided the rule should not. *Id.* As the Court explained, "[f]or all practical purposes an appeal of merits-without-attorney's-fees when there is a statute deeming the attorney's fees to be part of the merits is no more harmful to the trial process than an appeal of merits-without-attorney's-fees when there is no such statute." *Id.* Plus, the Court reasoned, having the time of appealability depend on whether attorneys' fees issues are viewed as part of the merits of the dispute or not in each case is confusing for litigants. *See id.* And because a wrong conclusion about whether an attorneys' fees issue is a merits or non-merits issue could have jurisdictional consequences, the Court concluded that "[c]ourts and litigants are best served by the bright-line rule." *Id.* So under *Budinich*, "a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." *Id.* at 202–03.

Several years later, the Supreme Court reaffirmed this rule in a different context. *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs and Emps.*, 571 U.S. 177 (2014). *Budinich* considered the issue in the statutory context. That is, *Budinich* held that an outstanding attorneys' fee issue didn't prevent a decision from being final when that decision awarded a litigant employment compensation under Colorado law, which provided that the judgment in such a suit "shall include a reasonable attorney fee in favor of the winning party, to be taxed as part of the costs of the action." 486 U.S. at 197 (citation omitted).

*Ray Haluch*, in contrast, considered the issue in the context of contractual damages. 571 U.S. at 184. There, the Court held that an unresolved attorneys' fee issue did not prevent a decision from being "final" even though attorneys' fees were part of the contract damages to be awarded. *Id.* at 184–85. As the Court emphasized, the rule was the same in both cases because the rule "did not depend on whether the statutory or decisional law authorizing a particular fee claim treated the fees as part of the merits." *Id.* at 185. Rather, the rule was a "uniform rule." *Id.*

We can understand why the district court thought these cases supported the conclusion that the Contempt Order was a "final decision." After all, the Contempt Order left only the determination of attorneys' fees, so a straight-forward application of the "bright-line rule" from *Budinich* and *Ray Haluch* yields the conclusion that the Contempt Order was a "final decision." And, it might seem, so does the "uniform rule" reasoning underlying the Supreme Court's adoption of the *Budinich/Ray Haluch* rule.

But this is a contempt case.[5] And we have explained that a contempt decision does not become "final" until the contempt penalties imposed are no longer "conditional or subject to

---

[5] Although we've recognized differences between the Bankruptcy Code's automatic stay and a court-ordered injunction, we've described the automatic stay as "essentially a court-ordered injunction." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1546 (11th Cir. 1996) (citation omitted). And we've noted that "any person or entity who violates the stay may be found in contempt of court." *Id.* (citation omitted); *see also* 11 U.S.C. § 105(a).

modification." *PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205, 1212 (11th Cir. 2019) (citations omitted). This rule aims to avoid the "risk of disrupting a continuing, orderly course of proceedings below." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 976 (11th Cir. 1986) (citation omitted).

And it finds its origins in *Fox v. Capital Co.*, 299 U.S. 105 (1936). In *Fox*, the district court found Fox in contempt and entered an order that fined Fox (1) $235,082.03 for his contempt and (2) an additional $10,000 in attorneys' fees and costs. *Id.* at 106. Under the order, payment of the $235,082.03—but not the $10,000 in fees—would be remitted if Fox purged himself of his contempt. *Id.* at 106–07. Fox sought to appeal the entry of the $10,000 fine, noting that it was not conditional. *See id.* at 108. But the Supreme Court held that the order in which the $10,000 fine was set was not a final one. *Id.* at 109. That was so because when the district court issued the order, Fox could still purge his contempt and avoid paying the $235,082.03. *Id.* at 108-09. In other words, the district court still had work to do in the case even after it issued the order. And the Court held that the controversy could not be "split" to render the $10,000 fine its own final decision. *See id.*

Relying on our *Fox*-based precedent, in *PlayNation*, we considered a case in which the district court found parties in contempt and ordered them to pay attorneys' fees and expenses, without specifying the amount. 939 F.3d at 1209–10. In a later order, the district court established the amount of the award for fees and costs. *Id.* at 1210. We held that "there was no final decree until the

amount of attorneys' fees and costs awarded as part of the [earlier] contempt order was set in the [later] order." *Id.* at 1212. When that happened, we explained, "the order containing the finding of contempt merged into the judgment and became subject to review on appeal." *Id.* (cleaned up). In other words, we effectively concluded that the contempt decision was "conditional or subject to modification" until the district court determined the amount of fees to be awarded.[6] *Id.*

Factually, Sweetapple's case is materially indistinguishable from *PlayNation*.[7] In both cases, the court entered an order finding litigants in contempt and awarding attorneys' fees generally as a contempt sanction. Then, the court in each case waited to fix the amount of attorneys' fees to be paid until it issued a later order for that purpose. Because we held that the court's contempt decision

---

[6] Nothing in the factual recitation in *PlayNation* suggests that the district court's decision to award fees itself was conditional or subject to modification, which might make the contempt order there seem like a "final" one if we were applying *Budinich*'s bright-line rule. But treating the contempt order as though it is not "final" when the only question left is the amount of fees to be awarded does promote "uniformity," or a "bright-line rule," in the context of contempt proceedings—even if that bright-line rule is the opposite of the one *Budinich* and its progeny espouse. And in any case, as we note above, we are bound by *PlayNation*, regardless.

[7] In *PlayNation*, we considered whether the order there was "final" under § 1291, while here, we evaluate whether the order is "final" under § 158 because the contempt order at issue is a bankruptcy order. But that is a distinction without a difference in this case. After all, it is the nature of contempt, and not of bankruptcy, that drives the outcome here.

in *PlayNation* did not become final until the court issued its later order setting the amount of attorneys' fees to be awarded, we must conclude the same thing here, on the same facts.

Our prior-precedent rule requires this result. Under our prior-precedent rule, we must comply with our precedent unless the en banc court or the Supreme Court abrogates it. *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1164 (11th Cir. 2023). For a Supreme Court opinion to overrule our precedent, it must be "clearly on point" and "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.* (citations omitted). Even if a later panel "is convinced the prior one reached the wrong result—for whatever reason," we must follow the prior precedent. *Id.* (citation omitted). And here, we issued *PlayNation* after the Supreme Court issued its decisions in *Budinich* and *Ray Haluch*. That means *PlayNation* controls.

So long story, short: we hold that the Contempt Order did not become a final and appealable order until the bankruptcy court issued the Fee Order. Because Sweetapple filed his appeal within fourteen days of the bankruptcy court's issuance of the Fee Order, *see* Fed. R. Bankr. P. 8002(a)(1) ("[A] notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."), Sweetapple's appeal of the Contempt Order was timely. And the district court had jurisdiction over the appeal.

We therefore vacate the district court's dismissal of Sweetapple's appeal and remand for the district court in the first instance to consider the merits of Sweetapple's appeal.

## IV.    CONCLUSION

We vacate the district court's dismissal of Sweetapple's appeal of the Contempt Order as untimely because Sweetapple timely filed his appeal within fourteen days of the bankruptcy court's entry of the Fee Order, which rendered the Contempt Order final. And we remand Sweetapple's challenge to the bankruptcy court's Contempt Order to the district court for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**