[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10718

_____

In re: JOSEPH PARROTT
JO-LYNN JENKINS PARROTT,

Debtors.

_____

JOSEPH PARROTT,
JO-LYNN JENKINS PARROTT,

Plaintiffs-Appellants,

*versus*

DOUGLAS W. NEWAY,
Trustee,
U.S. BANK NATIONAL BANK ASSOCIATION,
Trustee,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-00361-BJD

_____

Before ROSENBAUM, ABUDU, and TJOFLAT, Circuit Judges.

PER CURIAM:

It's not easy being a *pro se* litigant.  Though courts liberally construe *pro se* litigants' filings, *pro se* litigants must still comply with the rules or find themselves in trouble.  That's where Plaintiffs-Appellants Joseph and Jo-Lynn Jenkins Parrott found themselves when they tried to appeal the bankruptcy court's order dismissing their Chapter 13 bankruptcy case to the district court.  The district court ruled their notice of appeal untimely and dismissed their case for failure to comply with the court's rules.

After careful review of the record, and with the benefit of oral argument, we conclude that the Parrotts' notice of appeal was timely, and the district court abused its discretion in dismissing their case as a sanction.  We explain why below.

## I.    BACKGROUND

Joseph and Jo-Lynn Jenkins Parrott filed a voluntary petition for Chapter 13 bankruptcy in 2018.  The bankruptcy court ordered

the Parrotts to submit a Chapter 13 plan and to begin making interim payments to the bankruptcy trustee within thirty days. In response, the Parrotts filed a Chapter 13 plan, committing to pay about $900 per month for sixty months.

Following creditors' objections, the Parrotts filed the first amended Chapter 13 plan, in which they agreed to pay gradually increasing monthly payments for sixty months. The plan was amended twice more.

In late 2019, the trustee, Douglas Neway, filed a motion to dismiss the case for failure to submit interim payments. The bankruptcy court ordered the Parrotts to bring their payments current within twenty-one days, stating that failure to comply "shall result in the motion being granted and the case dismissed or converted without further notice or hearing."

The Parrotts filed two motions for extensions of time to make interim plan payments, which the bankruptcy court granted. In the order granting the second extension request, the bankruptcy court ordered the debtors to continue regular payments and to bring them current within ninety days. The court added that failure to comply with the order "will result in a dismissal of the case without further notice or hearing, upon the filing of an affidavit of default by the Trustee."

On January 16, 2020, the Parrotts' counsel moved to withdraw, citing irreconcilable differences. Nearly two weeks later, on January 29, 2020, Neway submitted an affidavit attesting to the

4                    Opinion of the Court                    21-10718

Parrotts' default.  He stated that the Parrotts were delinquent by nearly $9,000 and requested that the court dismiss the case.

That same day, the bankruptcy court issued an order stating that the case was "dismissed without prejudice effective on the 15th day following the date of entry of this Order" (the "January 29 Order").  The order added that the debtors could convert the case to one under another chapter of the Bankruptcy Code within fourteen days, but if they elected not to convert the case, "the case [would be] dismissed effective on the 15th day after the date of entry of this Order"—in other words, on February 13, 2020.

A week later, on February 5th, the Parrotts filed a *pro se* notice of appeal from the January 29 Order.  The bankruptcy court struck this notice from the record the following day because it failed to include the Parrotts' attorney's signature, as required by Rule 9011 of the Federal Rules of Bankruptcy Procedure.

The next week, on February 13, 2020, the bankruptcy court granted the Parrotts' counsel's motion to withdraw.  The same day, a docket entry stated that the bankruptcy court's dismissal was effectuated pursuant to the January 29 Order.

The Parrotts, now properly proceeding *pro se*, filed a second notice of appeal on February 18, 2020.  That notice again sought to appeal the January 29 Order.

On appeal, the Parrotts moved the district court for an extension of time to file their brief.  In a text-only order, the district court denied the motion without prejudice for failure to comply with the conferral requirements in Local Rule 3.01(g).  The Parrotts

then filed a second extension request.  That request also failed to include a statement saying whether the Parrotts had conferred first with Appellees.

The district court *sua sponte* ordered the Parrotts to show cause as to why the appeal should not be dismissed for lack of subject-matter jurisdiction.  As the court explained, in its view, the Parrotts' notice of appeal was untimely, so the appeal should be dismissed for lack of jurisdiction.  The district court ordered the Parrotts to file a written response no later than August 14, 2020, warning that failure to respond could result in sanctions.

Two days before that deadline, on August 12, 2020, the Parrotts filed a pleading entitled "Motion to Rule on 9.125.  Review of Trial Court Orders and Judgm[e]nts Certified by the District Courts of Appeal as Requiring Immed[i]ate Resolution by the Supreme Court of Florida."  In this filing, the Parrotts stated that they had appealed because, in their view, their residence had wrongfully been subject to foreclosure.  The pleading included a statement that "[t]he jurisdiction of the supreme court is invoked on rendition of the certificate by the district court of appeal," along with a statement of the "[p]rocedure [w]hen the Supreme Court of Florida [a]ccepts [j]urisdiction."

Roughly another two weeks passed before the district court dismissed the case.  It said that the contents of the Parrotts' August 12th motion "do not address the issues identified in the Order to Show Cause and in no way aid the Court in determining whether it has jurisdiction to hear this appeal."  The district court

questioned whether the Parrotts intended for the motion to be responsive to the order to show cause. It deemed the motion a "nonresponse" given that the motion "lack[ed a] substantive discussion of the issues at hand . . . ." Then the court said that the Parrotts had previously ignored an order from the court, citing their failure to confer with Appellees about an earlier extension request. Ultimately, the court concluded that it lacked jurisdiction to hear the appeal and dismissed the case. The district court then added that, even if it had jurisdiction, it would have dismissed the case because of the Parrotts' failure to comply with court-ordered deadlines. In the court's view, the Parrots were "incapable of complying with the Court's orders," so the court sanctioned them with dismissal.

The Parrotts timely appealed the district court's dismissal. First, they argued that the district court erred in concluding that it lacked jurisdiction to hear the appeal. And second, the Parrotts urged that the dismissal for noncompliance with court rules was too harsh a sanction for these then-*pro se* litigants.[1]

## II.    DISCUSSION

We "examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standards

---

[1] The Parrotts' first brief, filed *pro se*, argued that the dismissal violated the Parrotts' constitutional rights, and Neway's first brief addressed the case's underlying merits—not any jurisdictional issues. The Parrotts later filed a motion for appointment of counsel, which we granted. We then granted the Parrotts' counsel's motion to file a supplemental brief to address jurisdictional issues, among others. The issue is now fully briefed.

of review as the district court." *Barrett Dodge Chrysler Plymouth, Inc. v. Cranshaw (In re Issac Leaseco, Inc.)*, 389 F.3d 1205, 1209 (11th Cir. 2004). "Generally, we review *de novo* legal conclusions by either the bankruptcy court or the district court." *In re Asset Enhancement, Inc.*, 87 F.4th 1271, 1277 (11th Cir. 2023). And "[w]e review for abuse of discretion a district court's dismissal for failure to comply with the rules of court." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005).

Under this standard, we conclude that the district court erred in dismissing the Parrotts' appeal on both grounds. First, although the *pro se* Parrotts' initial, timely filed notice of appeal had a signature defect, it was promptly cured by their second-filed notice of appeal—conferring jurisdiction on the district court. Second, the district court abused its discretion in dismissing the case—an extreme sanction—because of the then-*pro se* Parrotts' "noncompliance" with court rules. We examine each issue in turn.

> *A. Because the Parrotts promptly cured the signature defect in their initial, timely filed notice of appeal through their second, non-defective notice of appeal, the district court maintained jurisdiction to hear their appeal.*

The district court erred in concluding it lacked jurisdiction: the Parrotts' second-filed notice of appeal cured the signature defect in their initial, timely notice of appeal.

Federal Rule of Bankruptcy Procedure 8002(a) provides that, generally, an appellant must file a notice of appeal "within 14 days

after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a). And district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" entered by bankruptcy judges. 28 U.S.C. § 158(a). Generally speaking, "[f]inal orders are those that end litigation on the merits and 'leave[] nothing for the court to do but execute the judgment.'" *In re Hillsborough Holdings Corp.*, 116 F.3d 1391, 1393 (11th Cir. 1997) (quoting *In re F.D.R. Hickory House, Inc.*, 60 F.3d 724, 726 (11th Cir. 1995)). The point of the final-order rule is to avoid "'piecemeal, prejudgment appeals' that would 'undermin[e] efficient judicial administration and encroac[h] upon the prerogatives of district court judges." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 38 (2020) (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)).

"The rules about what qualifies as 'final' are more flexible in bankruptcy because a bankruptcy case is 'an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor.'" *In re Asset Enhancement, Inc.*, 87 F.4th at 1278 n.4 (quoting *Bullard*, 575 U.S. at 501). "Accordingly, 'Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case.'" *Bullard*, 575 U.S. at 501 (quoting *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)).

We begin with whether the January 29 Order was a final one. On the one hand, arguably, the January 29 Order's own terms made it final on February 13, 2020. The order says three times that

it is "effective on the 15th day" following its date of entry—in other words, February 13th.  The docket entry echoes this; and indeed, the bankruptcy court itself did not enter a notice of dismissal on the docket until February 13th.

But on the other hand, the January 29 Order itself "finally dispose[d] of [a] discrete dispute[] within the larger case"—namely, whether to dismiss the Parrotts' Chapter 13 claims—on January 29, 2020.  *See Bullard*, 575 at 501 (citation and internal quotation marks omitted).  By these terms, even if the Parrotts later converted their claims to a different chapter of the bankruptcy code, the Chapter 13 case was finally resolved on the date of the order—January 29, 2020.

As it turns out, we need not decide whether the January 29 Order was a final one.  Even if it was, the Parrotts' notice of appeal was timely.

As we've noted, Bankruptcy Rule 8002(a) gives a party "14 days after entry of the judgment, order, or decree being appealed" to appeal. Fed. R. Bankr. P. 8002(a).  The Parrotts filed their notice of appeal on February 5th, well within the fourteen-day period following January 29th.  And though it was defective because it lacked their attorney's signature, Supreme Court precedent shows that the Parrotts cured any signature defect when they filed their second notice of appeal on February 18th.

In *Becker v. Montgomery*, the U.S. Supreme Court considered the jurisdictional consequences of violating the signature requirement of Rule 11 of the Federal Rules of Civil Procedure.  *See* 532

U.S. 757, 765 (2001).  It held that an appellant's failure to comply with the signature rule in filing his initial notice of appeal is curable. Indeed, the Court noted, an appellant's "initial omission [of his signature] [i]s not a 'jurisdictional' impediment toi pursuit of his appeal." *Id*.  And this is so even when the appellant makes the curative filing after the appeal period expires, so long as the appellant does so promptly.  *Id*. at 763–65.  As a result, the Court held, the appeal there should not have been dismissed.  *Id*. at 765.

As the Court explained, the language of Rule 11 permits signature defects to be "corrected promptly," so the initial signature omission does not deprive the court of jurisdiction.  *Id*. at 764–65 (citing Fed. R. Civ. P. 11).  Thus, "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court."  *Id*. at 767.

The same logic applies here.  Federal Rule of Bankruptcy Procedure 9011(a) provides that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party."  Fed. R. Bankr. P. 9011(a).  Indeed, the Eleventh Circuit has acknowledged that "Bankruptcy Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11": both "tie[] sanctions to an attorney's signature on a particular pleading or document which is filed with the court."  *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir. 1995).  "Thus, authorities applying these standards under Rule 11 . . . may be useful in applying Bankruptcy Rule 9011."  *Id*.

23-10478                Opinion of the Court                11

Here, like in the Rule 11 case before the *Becker* Court, the Parrotts promptly cured the signature defect by filing the properly signed second notice of appeal on February 18th—just five days after the district court granted their attorney's motion to withdraw.[2] And no genuine doubt exists in this case about who is appealing, from what, and to whom. *See Becker*, 532 U.S. at 767. In short, the bankruptcy court's order striking the first (and timely filed) notice of appeal did not deprive the district court of jurisdiction over the Parrotts' appeal.[3]

> B. *The district court abused its discretion in dismissing the case as a sanction for the Parrotts' "noncompliance" with court orders.*

Second, we conclude that the district court abused its discretion in dismissing the Parrotts' appeal for "noncompliance" with court orders. The district court sanctioned the Parrotts with dismissal because of two purported failures: the failure to respond adequately to the district court's order to show cause, and the

---

[2] In addition, pleadings filed by *pro se* litigants are held to a less stringent standard than counseled pleadings and are liberally construed. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).

[3] Indeed, the Parrotts seemed to have had no choice but to file the first notice of appeal *pro se* because their attorney had moved to withdraw due to "irreconcilable differences." While their attorney's motion remained pending, the Parrotts were in a catch-22 because they couldn't properly file, and their attorney wouldn't file. And given that the district court ruled on the Parrotts' attorney's motion to withdraw on the fifteenth day after the January 29 dismissal order, it wasn't until the fourteen-day deadline for appealing that order had arguably expired that the Parrotts could properly file their *pro se* notice.

Parrotts' earlier failure to comply with a local rule requiring conferral with one's adversary before filing extension requests.

We have repeatedly cautioned that "dismissal is a sanction of last resort," appropriate in only "extreme circumstances." *McKelvey v. AT & T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986) ("[T]he severe sanction of dismissal—with prejudice or the equivalent thereof—should be imposed 'only in the face of a clear record of delay or contumacious conduct by the plaintiff.' . . . A finding of such extreme circumstances . . . must, at a minimum, be based on evidence of willful delay; simple negligence does not warrant dismissal." (citation omitted)); *see also Kilgo v. Ricks*, 983 F.2d 189, 192 (11th Cir. 1993) ("[B]ecause the penalty is so drastic, a district court may dismiss a case with prejudice only where 'there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'" (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985))); *Betty K Agencies, Ltd.*, 432 F.3d at 1339 (same).

This case presents no extreme circumstances warranting dismissal. As an initial matter, the then-*pro se* Parrotts did respond to the order to show cause—or at least appear to have faithfully attempted to do so. As we've described, the Parrotts' response was not entirely devoid of statements about the court's jurisdiction—even if the statements in question were not legally cognizable in this context.

23-10478                 Opinion of the Court                 13

But then again, the Parrotts were proceeding *pro se*, and the jurisdictional issue here was not straight-forward.[4]  *Cf. McKelvey*, 789 F.2d at 1520–21 (concluding that failure to respond to an order to show cause "was, at most, simple negligence" and did not "constitute the 'extreme circumstances' necessary to impose the drastic remedy of dismissal").  And while the Parrotts' previous failure to confer with opposing counsel before filing their motion for an extension may have been understandably frustrating for the court, nothing in the record here indicates willful disobedience.

The district court also failed to explain why lesser sanctions wouldn't suffice.  *See Betty K Agencies, Ltd.*, 432 F.3d at 1339; *Mingo v. Sugar Cane Growers Co-op. of Fla.*, 864 F.2d 101, 102–03 (11th Cir. 1989) (finding an abuse of discretion where the district court failed to consider "the wide range of sanctions at its disposal," as making such a finding "is essential before a party can be penalized for his attorney's misconduct").  Nor, based on the record, is it obvious to us that dismissal was necessary here.  The district court's mere conclusory statement, without explanation, that "no other sanction short of dismissal will suffice" does not show that the district court made the required finding to warrant the extreme sanction of dismissal.

---

[4] Indeed, the complex jurisdictional issue necessitated supplemental briefing in this case.

In sum, the district court abused its discretion in dismissing the case as a sanction for the Parrotts' purported "noncompliance" with the court's rules and orders.

### III.    CONCLUSION

For the reasons we've described, we conclude that the district court, first, erred in determining that it lacked jurisdiction to hear the Parrotts' appeal; and second, abused its discretion in dismissing the Parrotts' case as a sanction for "noncompliance."  So we vacate the district court's dismissal and remand the case to the district court to decide the merits of the Parrotts' appeal.

**VACATED and REMANDED.**

21-10718                Opinion of the Court                1

TJOFLAT, Circuit Judge, concurring:

In his 1961 novel *Catch-22*, Joseph Heller describes the impossible situation faced by World War II pilots. If they were insane, they could be grounded from flying. But if they asked to to be grounded from a dangerous mission, that request showed a concern for their safety—proof of sanity. So, if a pilot asked to stop flying, it meant he was sane and should keep flying. But if he flew, he must have been insane and was grounded. It was a no-win loop. The Majority aptly compares this to the Parrotts' dilemma: they needed their attorney's signature to move forward, but their attorney's pending withdrawal kept that signature out of reach. Maj. Op. at n.3. I agree with the Majority and write separately to explain why this catch-22 was avoidable. The blame falls on three parties: Parrotts' counsel, the Bankruptcy Court, and the Chapter 13 Trustee. Here is the relevant timeline:

- **January 16**: The Parrotts' counsel moves to withdraw.
- **January 29**: The Chapter 13 Trustee submits its affidavit of the Parrotts' default, and the Bankruptcy Court issues its order dismissing the case, to take effect fifteen days later.
- **January 30**: The negative-notice period for the motion to withdraw expires.[1]

---

[1] FLMB Local Rule 2091-2 requires an attorney seeking to withdraw to follow the negative notice procedures outlined in Local Rule 2002-4. Under that procedure, the Court may grant the requested relief without further notice if no response is filed within fourteen days. Here, no response to the motion to withdraw was submitted, allowing the Court to grant the motion on January 30.

2                    Opinion of the Court                    21-10718

- **February 5**: The Parrotts, seemingly uncertain about their status, file a notice of appeal that they signed themselves.
- **February 6**: The Bankruptcy Court strikes the notice for lacking the Parrotts' lawyer's signature.
- **February 13**: The order dismissing the Parrotts' case takes effect, and the Court grants their attorney's motion to withdraw.
- **February 18**: The Parrotts, now officially proceeding *pro se*, file a second notice of appeal. The Court later dismisses this as untimely.

This timeline tells a story: each party had a chance to prevent confusion, yet none took it. The Parrotts faced the procedural thicket of bankruptcy without guidance, caught in a loop where their efforts went unaided.[2] Let us look at where each party went wrong:

First, the Parrotts' counsel bears the most blame for today's debacle. True, he moved to withdraw before the dismissal order. But under hornbook rules of professional responsibility, he remained the Parrotts' lawyer until the Court granted his motion. *See* R. Reg. Fla. Bar 4-1.16 (requiring a lawyer to comply with local rules when terminating representation)*; FLMB L.R. 2091-2* (stating that an attorney cannot withdraw from representation without leave of the court). To be sure, the Court *could have* denied his motion to withdraw, requiring him to uphold his duties to the Parrotts through the end of their case. That the Court ultimately granted

---

[2] I express no opinion on the merits of any arguments the Parrotts made during their bankruptcy proceedings or on other issues raised in their appeal. My concurrence is limited solely to the striking of the Parrotts' notice of appeal.

the motion makes no difference here; while the motion was pending, counsel's duties remained unchanged. Importantly, he still owed the Parrotts a duty of diligence and promptness. *See* R. Reg. Fla. Bar 4.1-3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."). So, while he did not have to file a notice of appeal on the Parrotts' behalf—especially if he considered such an appeal meritless—his responsibilities did not end with his motion to withdraw. Even "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests." R. Regulating Fla. Bar 4-1.16(d).

After moving to withdraw, the Parrotts' counsel was served with the Trustee's Affidavit of Debtors' Default and the Parrotts' Notice of Appeal. He knew the Parrotts tried to file a notice of appeal without his signature—an effort that revealed their intent to proceed and highlighted their vulnerability without proper legal representation. At a minimum, counsel should have alerted the Court to the procedural issues that arose when the Parrotts filed their notice of appeal while his motion to withdraw was still pending. The Parrotts' notice of appeal was stricken because it lacked the "original signature of Debtor's Attorney as required by Fed. R. Bank. P. 9011." In other words, the Parrotts' counsel was the only person in the action who could have resolved the defect by adding his signature. His nonfeasance left the Parrotts "in a catch-22 because they couldn't properly file, and their attorney wouldn't file." Maj. Op. at n.3.

Second, the Bankruptcy Court should not have imposed new obligations on the Parrotts while their attorney's motion to withdraw was pending. When the Parrotts faced dismissal, the Court's January 29 order offered them the option to convert their case to a case under another chapter of the Bankruptcy Code and allowed them to "file a motion to vacate" or reconsider its decision. But if the Parrotts pursued either option—or even chose the drastic step of converting their case to a case under chapter 7—the Court would have denied those filings unless their attorney signed them (the catch-22).

This dilemma played out in real time. The Bankruptcy Court struck the Parrotts' initial notice of appeal just one day after they filed it. Yet, for reasons left unexplained, the Court waited twenty-eight days to decide the motion to withdraw—fourteen days after the negative notice period's expiration, and one day after the fourteen-day deadline to appeal (assuming the January 29th order was final on that day). So, as I already highlighted, when the Parrotts tried to appeal, the Court dismissed their notice for lacking their attorney's signature. But had the Bankruptcy Court acted on the motion to withdraw with the same haste it employed to strike the notice of appeal in under a day, this appeal would not be before us today.

Third, the Chapter 13 Trustee should have acted, even if no statute explicitly required him to. As a fiduciary of the bankruptcy estate, whose role includes overseeing assets that could be used to pay creditors, the Chapter 13 Trustee has broader duties defined by

21-10718                Opinion of the Court                5

Congress to ensure the fair administration of bankruptcy cases. *See* 11 U.S.C. § 1302. This role is crucial to maintaining transparency and fairness throughout the process for all parties, including both debtors and creditors. When it became clear that the Parrotts were effectively proceeding without legal representation during a critical period, the trustee should have alerted the Court to this reality. For example, the trustee could have responded to the motion to withdraw, highlighting that the Parrotts faced a looming default that jeopardized their case.[3] By remaining silent, however, the trustee further complicated an already precarious situation. This was to the detriment of all parties with an interest in the bankruptcy estate, including the creditors awaiting the conclusion of the Parrotts' bankruptcy proceedings.

The lesson is clear: when a lawyer moves for leave to withdraw, he must stay vigilant to any developments that might affect his clients while the motion is pending. The duty of representation does not disappear until the court grants the motion, and any lapse can trigger serious procedural consequences. The court, too, must recognize how the timing of its decisions can impact parties caught in the uncertainty of shifting representation. The trustee shares this duty, ensuring that the administration of the bankruptcy estate is not imperiled due to such transitions. Here, those failures left the

---

[3] Although serving the affidavit on both the Parrotts and their attorney may have technically fulfilled the trustee's duty to notify the counsel of record, it failed to address the practical reality that the Parrotts were unrepresented and attempting to proceed *pro se*.

6                    Opinion of the Court                    21-10718

Parrotts—*pro se* and unprepared—to navigate the complexities of bankruptcy law alone, leading to predictable and preventable outcomes.